RUSSELL T. MONAHAN USB NO. 9016
COOK & MONAHAN, LLC
Attorneys for Plaintiff
323 South 600 East, suite 200
Salt Lake City, Utah 84102
Telephone: (801) 595-8600
Telefax:  (801) 595-8614
E-Mail:  russ@cooklawfirm.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CAROLYN LINDSEY<br><br>        Plaintiff,<br><br>vs.<br><br>SKULLCANDY, INC. and JAMES NANCE<br><br>        Defendants. | **COMPLAINT**<br><br><br>Civil No: 2:24-cv-00108<br><br>Judge:<br>Magistrate:<br>Jury Trial Demanded |

The Plaintiff, Carolyn Lindsey, by and through her counsel, Russell T. Monahan, hereby complain against the Defendants for cause of action as follows:

GENERAL ALLEGATIONS

1. This action arises under the Fair Labor Standards Act 29 U.S.C. § 201 et al, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 et seq., amended for employment discrimination.  Jurisdiction is specifically conferred upon this Court under and by virtue of 42 U.S.C. § 2000e(5).  Equitable and other relief are also sought under 42 U.S.C. § 2000e5(g).  Jurisdiction is also conferred upon this Court under and by virtue of 29 U.S.C. §626(c), 28 U.S.C. §§ 1331.

2. The Plaintiff is a resident of the County of Salt Lake, State of Utah.

3. The Defendant, Skullcandy, Inc. (Defendant Skullcandy) is a Utah for-profit corporation located at 6301 North Landmark Drive, Park City, UT 84098 registered to do business in the State of Utah.

4. Defendant Skullcandy is an employer as defined by 29 U.C.A. § 203(d).

5. Defendant James Nance (Defendant Nance), was the General Counsel and Administrative Officer Defendant Skullcandy and is sued in his individual capacity and in his capacity as Administrative Officer of Defendant Skullcandy.

6. Defendant Nance is an employer as defined by 29 U.C.A. § 203(d).

7. Defendant Nance was the Plaintiff's immediate supervisor and was responsible for insuring that Defendant Skullcandy complied with the terms of the Fair Labor Standards Act.

8. Venue is proper in the Central Division under 28 U.S.C. § 1391(b) in that the Plaintiff resides within the Central Division and a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred in such district.

9. Plaintiff was employed by Defendant Skullcandy as a legal assistant from April 2019 until April 2021.

## FACTS RELATED TO THE OVERTIME VIOLATIONS

10. Plaintiff was a non-exempt employee.

11. Plaintiff worked as legal assistant.

12. Plaintiff work duties did not require the Plaintiff to exercise discretion and independent judgment with respect to matters of significance.

13. Plaintiff's job duties included; a) typing up agreements and letters; b) researching addresses for cease and desist letters; c) verifying payments to approved vendors; d) confirming information already provided; e) creating lists cataloguing established trademarks, infringers and complaints.

14. Plaintiff was initially paid hourly at $25.00 per hour.

15. Plaintiff was switched to salary shortly after being hired when it was determined that she would be working too many overtime hours.

16. None of the Plaintiff's job duties were altered when the Plaintiff was switched to a salary.

17. Plaintiff was paid every two weeks.

18. At the time of her termination, Plaintiff was earning a salary of $2,307.70 every two weeks or $60,000.00 per year or $28.85 per hour.

19. Prior March 1, 2021, Plaintiff earned $2,000.58 every two weeks or $52,015.08 per year or $25.01 per hour.

20. Plaintiff regularly worked hours in excess of 40 hours per week. Some weeks, Plaintiff worked 15 additional hours, sometime the Plaintiff worked over 20 additional hours. Plaintiff estimates that she worked on average 15 hours over 40 per week.

21. Plaintiff was not compensated with overtime for the hours in excess of the 40 hours.

22. Defendant Skullcandy regularly declined to provide overtime wages for non-exempt employees who worked in excess of 40 hours per week.

23. Defendant Skullcandy failed to maintain records of the hours non-exempt employees work so to avoid having to compensate the employees for their overtime.

24. Between April 2019 and April 2021, Plaintiff has calculated that she worked 1560 hours of overtime.

25. Plaintiff is entitled to $58,500 in overtime compensation based on an hourly rate of $25.00.

## FACTS RELATED TO THE ADEA CLAIMS

26. On or about December 6, 2020, Plaintiff injured her elbow and had to have surgery to repair the injury on December 11, 2020.

27. Plaintiff's cast was removed on December 21, 2020 and Plaintiff had her full range of motion restored by December 23.

28. Plaintiff was capable of returning to work on December 23, 2020 however Defendant Nance and Jessica Barwinski, Senior Manager over Human Resources insisted on placing Plaintiff on disability. Plaintiff complained to Defendant Nance that she strongly disagreed with Barwinshi's decision to place Plaintiff on disability.

29. Plaintiff was off work for less than two weeks.

30. By placing the Plaintiff on disability, Defendant Skullcandy was able to deny paying the Plaintiff her salary.

31. Plaintiff returned to work on January 4, 2021.

32. Defendant Nance expressed shock and some dismay that Plaintiff had returned to work.

33. The disability insurance representative handling the Plaintiff's disability claim expressed that they did not understand why the Plaintiff was placed on disability because Plaintiff was returning to work before the claim had even been processed.

34. On January 5, 2021, Plaintiff was at work and on the phone with Defendant Nance when Plaintiff lost sight in one eye.

35. Plaintiff went to the hospital and was diagnosed as having suffered a Transient Ischemic Attack (TIA).

36. Plaintiff was hospitalized for three days and then cleared to return to work.

37. When Plaintiff returned to work, Plaintiff noticed, things had changed between Defendant Nance and Plaintiff. Prior to these medical issues, Plaintiff and Defendant Nance were on friendly terms. After Plaintiff's return, Defendant Nance displayed a condescending, rude and disrespectful attitude towards Plaintiff.

38. Defendant Nance made inappropriate comments like "I don't want you to stroke out on me".

39. Defendant Nance's comments regarding Plaintiff having a stroke became so commonplace that Plaintiff had to inform him that Plaintiff didn't have a stroke. Plaintiff requested that her doctor write a letter informing her employer that Plaintiff had not suffered a stroke.

40. Over the next couple of months Plaintiff requested that Defendant Nance cease with his condescending comments.

41. On or about April 13th, 2021 Plaintiff went to work.

42. Defendant Nance was being very condescending and rude.

43. Plaintiff went into Defendant's Nance's office and requested that Defendant Nance cease with his behavior.

44. He responded, "what do you want?" Plaintiff answered "I want you to treat me with the same respect you do everybody else in this office". No screaming or tantrums just very matter of fact.

45. After Plaintiff returned to her desk, she received an e-mail for Human Resources telling Plaintiff that her resignation was accepted.

46. Plaintiff was placed on disability because of her age.

47. At the time, Plaintiff was over 65 years of age.

48. During the last six months of Plaintiff's employment, Plaintiff observed that the Defendant was treating other older employees differently.

49. Younger employees with more serious medical disabilities were not required to go on medical disability.

50. Although the Plaintiff was not disabled, the Defendant treated the Plaintiff as though she had an ongoing disability based on the TIA.

51. Prior to Plaintiff losing her employment with Defendant Skullcandy, Plaintiff learned that Skullcandy was seeking a buyer for the business.

52. Defendant Skullcandy's discrimination against older employees was an attempt to divest itself of the older employees in order to make itself more marketable to potential buyers.

53. On November 14, 2023, the EEOC issued Plaintiff a right to sue. Exhibit A.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARD ACT 29 U.S.C. §207.

54. The Plaintiff incorporates by reference paragraphs 1 through 53 above as if specifically set forth herein.

55. Defendant Skullcandy is an employer engaged in interstate commerce within the meaning of the Fair Labor Standards Act.

56. Defendant Skullcandy, Defendant Nance are employers as defined by 29 U.C.A. § 203(d).

57. In failing to pay Plaintiff overtime and to record Plaintiff's hours, the actions of Defendant Skullcandy violate 29 U.S.C. §207 of the Fair Labor Standards Act.

58. As a direct and proximate result of the Defendants' wrongful conduct, the Plaintiff has suffered injury because of the Defendants' unlawful conduct.

59. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff seeks appropriate civil relief as provided by 29 U.S.C. §216.

60. Plaintiff is entitled to an award of damages equal to all unpaid overtime and an award of liquidated damages equal to all unpaid overtime.

61. The Plaintiff is entitled to reasonable attorney's fees and costs of court.

62. Under the 29 U.S.C. § 203(d), Defendant Skullcandy and Defendant Nance are joint and severally liable for any damages awarded to the Plaintiff under the Fair Labor Standards Act.

### SECOND CAUSE OF ACTION
### Age Discrimination in Employment Act

63. The Plaintiff incorporates by reference paragraphs 1 through 62 above as if specifically set forth herein.

64. At all times relevant, Plaintiff was a member of a protected class under the Age Discrimination in Employment Act.

65. The Defendant's actions in terminating the Plaintiff's employment without cause and replacing her with an employee under the age of 40 was an act of discrimination and in violation of the Plaintiff's rights under the Age Discrimination in Employment Act.

66. As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff has suffered loss of employment.

67. As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff has suffered loss of income to date, plus interest, in an amount uncertain to date but in an amount to be demonstrated at trial.

68. The Plaintiff is entitled to reinstatement and back pay; or in the alternative, in the event that reinstatement is not a viable remedy, the Plaintiff is entitled to front pay in an amount to be determined at trial.

69. The Plaintiff is entitled to affirmative injunctive relief prohibiting the Defendant from discriminating against individuals on the basis of their age under the Age Discrimination in Employment Act.

70. As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff suffered severe emotional distress, humiliation and anguish all to her damage in the amount of $200,000.00 or such other amount as may be demonstrated at trial.

71. The acts of the Defendant were willful, wanton and in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to punitive damages in the amount of $200,000.00, or such other amount as may be demonstrated at trial.

72.     The Plaintiff is entitled to reasonable attorney's fees and costs of court.

## THIRD CAUSE OF ACTION
**Retaliation under the Age Discrimination in Employment Act**

73.     The Plaintiff incorporates by reference paragraphs 1 through 72 above as if specifically set forth herein.

74.     Defendant Skullcandy, engaged in a pattern of behavior which constituted a hostile work environment directed at the Plaintiff in retaliation for Plaintiff's complaints to Defendant Nance.

75.     The actions described above were demeaning, offensive and discriminatory and retaliatory to Plaintiff and were in violation of ADEA.

76.     Defendant Skullcandy was at all times aware of the hostile work environment and permitted it to permeate throughout the workplace.

77.     Defendant Skullcandy actions in terminating Plaintiff were in retaliation for Plaintiff's protected activities.

78.     As a direct and proximate result of Defendant Skullcandy's wrongful conduct, Plaintiff has suffered loss of income, to date, plus interest, in an amount uncertain to date but in an amount to be demonstrated at trial.

79.     The Plaintiff is entitled to affirmative injunctive relief prohibiting the Defendant from discriminating against individuals on the basis of their age under the Age Discrimination in Employment Act.

80.     As a direct and proximate result of the Defendant's wrongful conduct, the Plaintiff suffered severe emotional distress, humiliation and anguish all to her damage in the amount of $200,000.00 or such other amount as may be demonstrated at trial.

81. The acts of the Defendant were willful, wanton and in reckless disregard of the Plaintiff's rights, and the Plaintiff is entitled to punitive damages in the amount of $200,000.00, or such other amount as may be demonstrated at trial.

82. The Plaintiff is entitled to reasonable attorney's fees and costs of court.

WHEREFORE, the Plaintiff prays for relief and judgment against the Defendants as follows:

1. For actual damages as permitted under 42 U.S.C. § 2000e5 and 29 U.S.C. §216.

2. For liquidated damages as permitted under 29 U.S.C. §216.

3. For compensatory damages.

4. For injunctive relief prohibiting the Defendants from further unlawful conduct.

5. For interest, costs of court and a reasonable attorney's fees.

6. For punitive damages.

7. For such other and further relief as the court may deem fit and proper.

8. Plaintiff demands a jury trial.

DATED this 9th day of February 2024.

/s/ Russell T. Monahan
RUSSELL T. MONAHAN
Attorney for Plaintiff
COOK & MONAHAN, LLC
323 South 600 East, Suite 200
Salt Lake City, UT 84102
801-595-8600
russ@cooklawfirm.com